IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| HERMAN WILLIAMS, JR., | : | |
| Plaintiff, | : | |
| vs. | : | CIVIL ACTION 07-0059-WS-C |
| DR. ROBERT BARNES, et al., | : | |
| Defendants. | : | |

REPORT AND RECOMMENDATION

Plaintiff, an Alabama prison inmate proceeding pro se and in forma pauperis filed a Complaint under 42 U.S.C. § 1983. This action was referred to the undersigned pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72.2(c)(4), and is now before the undersigned on the motion for summary judgment of Defendant Dr. Robert Barnes[1] (Docs. 11 and 22), and Plaintiff's Objection thereto (Doc. 23). For the reasons stated below, it is recommended that the motion for summary judgment of Defendant Barnes be granted and that Plaintiff's action be dismissed with prejudice.

I. SUMMARY OF FACTUAL ALLEGATIONS

1. From its review of the record, the Court summarizes the parties' allegations that

---

[1] Initially, in addition to Dr. Barnes, Plaintiff named the following defendants in this action: Correctional Supervisor Lt. Steve Lane; Nurse Assistant Alicia Hetrick, and Nurse Shawn Geohagan. (Doc. 1, Complaint). However, in Plaintiff's pleading titled "Motion for Objection to Defendants Summary Judgment Motion/and Appointment of Counsel for Plaintiff is respectfully Requested," Plaintiff states that he "prays to drop all other defendants in this action, all but (one) leaving only Dr. Robert Barnes." (Doc. 23 at 2). The Court, therefore, construes this pleading, in part, as a motion to dismiss, and dismisses all defendants with the exception of Dr. Robert Barnes. Furthermore, Plaintiff's request for counsel is moot, as this Court has determined that Plaintiff has not suffered a violation of his constitutional rights.

are material to the issues addressed in this Report and Recommendation.

2. Plaintiff claims that, from November 25, 2006, through December 1, 2006, he was denied proper medical care while incarcerated at two prison institutions, Fountain Correctional Facility ("Fountain"), and J.O. Davis Correctional Facility ("Davis"), both in Atmore, Alabama. (Doc. 1 at 4). Plaintiff claims that during this time period, he suffered from severe neck and head pain, and further, that following his receipt of medical treatment in the inmate hospital, his speech was slurred and he had no feeling in his fingers. Plaintiff believes that he suffered a stroke as a result of medical treatment by Dr. Barnes and the other medical staff. (Id.).

3. Plaintiff's medical records reflect that he first complained of neck pain in May of 2006. (Doc. 11, Ex. A.1 at 2). Plaintiff was instructed to perform stretching exercises, and he was given a prescription for Motrin 600 mg. (Id.). Plaintiff's next complaint of neck pain appears to have been on October 21, 2006. (Doc. 11, Ex. A, Part III at 85). Plaintiff complained of pain and pressure in his neck and right shoulder, and also appeared to be suffering from a cold. Plaintiff was given another prescription for the pain reliever Motrin and advised to return if his condition did not improve. (Id.).

4. Subsequently, on November 26, 2006, Plaintiff complained of a headache. Plaintiff was administered a dose of Percogesic medication and discharged. (Id. at 84). The next day, November 27, 2006, Plaintiff again appeared at the prison infirmary complaining of neck stiffness and a headache throughout the back of his head. (Id. at 83). Dr. Barnes examined Plaintiff, noting that he suspected that Plaintiff's headache was

occurring as a result of increased blood pressure. (Doc. 11, Ex. A.3 at 2; Ex. B at 2). Dr. Barnes prescribed the medications Flexeril 10 mg and Feldene 20 mg for Plaintiff, discharged him, and advised him to return if his condition worsened. (Id.; see also Doc. 11, Ex. A.3 at 2). On November 28, 2006, Plaintiff again returned to the infirmary complaining of severe headache and neck stiffness. At this time, Dr. Barnes ordered x-rays of Plaintiff's cervical spine, and Dr. Barnes also placed Plaintiff on "23 hour observation." (Doc. 11, Ex. A.4; Ex. A.6; and Ex. B at 2).

5. Dr. Barnes again saw Plaintiff on November 29, 2006, and he admitted Plaintiff, who was continuing to complain of head and neck pain, to the medical ward at that time. Plaintiff's cervical spine x-ray results indicated that Plaintiff has Degenerative Disc Disease at C5 to C7. (Doc. 11, Ex. A.6; Ex. B at 2-3). Plaintiff remained on the ward on November 30, 2006, and continued to receive treatment and medication.

6. Plaintiff's symptoms were improved on December 1, 2006, and, with a diagnosis of "neck pain and stiffness improved with etiology unknown," he was discharged with prescriptions for Percogesic and Flexeril. (Doc. 11, Ex. B at 3). At this time, Plaintiff's neck was no longer stiff, and he was no longer in distress. (Id.).

7. Plaintiff next presented to the chronic care clinic on December 14, 2006, complaining of headaches and numbness. (Doc. 11, Ex. C). PHS employees found his tongue twisted on the right side, and thus ordered blood work. Also on December 14, 2006, Dr. Barnes ordered skull x-rays. (Doc. 11, Ex. A.8). The x-rays showed no evidence of fracture or defect in the skull, but Plaintiff's chest x-rays revealed

calcification secondary to a previous granulomatous disease.  (Id.).

8. According to his medical records, Plaintiff was next seen by Dr. Barnes on December 20, 2006, for an ulnar nerve deficit bilaterally with unknown etiology and a problem with his left knee.  (Id.).  Dr. Barnes prescribed vitamins, and advised Plaintiff that they would recheck his left knee in 5 weeks.  (Id.).

9. Plaintiff was admitted to the prison infirmary on December 29, 2006, with a diagnosis of neck pain and stiffness with etiology unknown.  At this time, Plaintiff had neck pain and stiffness for three days.

10. On January 29, 2007, Plaintiff was seen in follow-up for problems with his left knee and complaints of numbness in both hands.  (Doc. 11, Ex. B at 3).  Dr. Barnes noted that the numbness in Plaintiff's hands was improving on the vitamins that Dr. Barnes had previously prescribed for Plaintiff on December 20, 2006.  Dr. Barnes could not determine a medical cause for the numbness, but advised Plaintiff to continue taking the vitamins, since they seemed to be helping the condition.  (Id.).

11. During the period of time complained of by Plaintiff, his medical records reflect quite extensive medical care, including exams, diagnostic tests, monitoring, and prescriptions of the following medications: Flexeril, Tylenol, Motrin, Clonidine, Feldene, Aspirin, Tenormin, Lopid, and Darvocet.  (Doc. 11, Ex. A, Parts I-III; Exs. A.2, A.3, A.5-A.9).

## II.  PROCEDURAL ASPECTS OF THE CASE

1. On January 22, 2007, Plaintiff filed the present  § 1983 Complaint in this Court,

seeking compensatory and punitive damages against Defendant Dr. Robert Barnes for insufficient medical treatment of his neck and head pain, thereby violating his Eighth Amendment right against cruel and unusual punishment.  (Doc. 1).

2. On May 11, 2007, and May 16, 2007, Defendant filed his Special Report and Answer, denying any violation of Plaintiff's constitutional rights and asserting various defenses, including qualified and absolute immunity.[2]  (Docs. 11 and 14).

3. The Court converted Defendant's Special Report and Answer to a motion for summary judgment on January 7, 2008.  (Doc. 22).

4. As noted above, on January 23, 2008, Plaintiff filed an Objection to Defendant's summary judgment motion, in which he dismissed all Defendants with the exception of Dr. Robert Barnes.  (Doc. 23).  These motions and responses are now before the Court.

### III. SUMMARY JUDGMENT STANDARD

1. In analyzing the propriety of a motion for summary judgment, the Court begins with these basic principles.  The Federal Rules of Civil Procedure grant this Court

---

[2] As a private entity, Defendant Barnes is not entitled to immunity, whether qualified or absolute.  See Swann v. Southern Health Partners, Inc., 388 F.3d 834, 837 (11th Cir. 2004) ("The parties agree that as a private entity, SHP [a private corporation employed by the county to provide medical care to inmates at the county jail] is not entitled to assert a qualified immunity defense."); Hinson v. Edmond, 205 F.3d 1264, 1265 (11th Cir. 2000) (a "privately employed prison physician [ ] is ineligible to advance the defense of qualified immunity"); Edwards v. Alabama Dep't of Corrections, 81 F. Supp. 2d 1242, 1254 (M.D. Ala. 2000) (a "private entity" contracting with a state to provide medical services to state inmates "is not entitled to qualified immunity....").  With respect to absolute immunity, Defendant has cited no case, and the Court is aware of no case, extending absolute immunity to privately employed medical companies or privately employed physicians and nurses providing medical services to state inmates.

authority under Rule 56 to render "judgment as a matter of law" to a party who moves for summary judgment. "[S]ummary judgment is proper 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact. . . .'" Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986) (quoting Fed. R. Civ. P. 56(c)).

2. The Court must view the evidence produced by "the nonmoving party, and all factual inferences arising from it, in the light most favorable to" that party. Barfield v. Brierton, 883 F.2d 923, 934 (11th Cir. 1989).

3. However, Rule 56(e) states that:

> an adverse party [to a motion for summary judgment] may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

Fed. R. Civ. P. 56(e); see also Celotex Corp., 477 U.S. at 325-27.

4. "[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. . . . If the evidence is merely colorable, . . . or is not significantly probative, . . . summary judgment may be granted." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-50 (1986) (internal citations omitted).

5. "Summary judgment is mandated where a party 'fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on

which that party will bear the burden of proof at trial.'" <u>Custom Mfg. and Engineering, Inc. v. Midway Servs., Inc.</u>, 2007 WL 4165634, *3 (11th Cir. 2007) (citations omitted).

## IV. DISCUSSION

1. In this action, Plaintiff alleges that Defendant Dr. Robert Barnes violated his rights under the Eighth Amendment by failing to provide proper medical treatment for him during roughly a two week period of his incarceration at J.O. Davis Correctional Facility and Fountain Correctional Facility. Specifically, Plaintiff alleges that he suffered from head and neck pain, and following treatment in the prison infirmary, numbness of his fingers and slurred speech. (Doc. 1 at 4-5). Additionally, Plaintiff contends that he should have been sent to a free world physician for care, and he believes that he suffered a stroke during this specific time period. (<u>Id.</u>). According to Plaintiff, this alleged improper medical care constituted cruel and unusual punishment. (<u>Id.</u>).

2. The Eighth Amendment provides that, "[e]xcessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." U.S. Const. amend. VIII.

3. "The Eighth Amendment's proscription of cruel and unusual punishments prohibits prison officials from exhibiting deliberate indifference to prisoners' serious medical needs." <u>Campbell v. Sikes</u>, 169 F.3d 1353, 1363 (11th Cir. 1999) (citing <u>Estelle v. Gamble</u>, 429 U.S. 97, 104 (1976)).

4. In <u>Sims v. Mashburn</u>, 25 F.3d 980 (11th Cir. 1994), the Eleventh Circuit delineated the objective and subjective portions of an Eighth Amendment claim as

7

follows:

> An Eighth Amendment claim is said to have two components, an objective component, which inquires whether the alleged wrongdoing was objectively harmful enough to establish a constitutional violation, and a subjective component, which inquires whether the officials acted with a sufficiently culpable state of mind.

Sims, 25 F.3d at 983 (citing Hudson v. McMillian, 503 U.S. 1, 8 (1992)).

5. To meet the objective element required to demonstrate a denial of medical care in violation of the Eighth Amendment, a plaintiff first must demonstrate the existence of an "objectively serious medical need." Farrow v. West, 320 F.3d 1235, 1243 (11th Cir. 2003).

6. A serious medical need is "'one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'" Id. (quoting Hill v. Dekalb Reg'l Youth Det. Ctr., 40 F.3d 1176, 1187 (11th Cir. 1994)). "In either of these situations, the medical need must be one that, if left unattended, pos[es] a substantial risk of serious harm." Id. (internal quotation marks and citation omitted).

7. In order to meet the subjective requirement of an Eighth Amendment denial of medical care claim, Plaintiff must demonstrate "deliberate indifference" to a serious medical need. Farrow, 320 F.3d at 1243.

8. "Deliberate indifference" entails more than mere negligence. Estelle, 429 U.S. at 106; Farmer v. Brennan, 511 U.S. 825, 835 (1994).

> 9.      The Supreme Court clarified the "deliberate indifference" standard in <u>Farmer</u> by holding that a prison official cannot be found deliberately indifferent under the Eighth Amendment "unless the official *knows of* and *disregards an excessive risk to inmate health or safety;* the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." <u>Farmer</u>, 511 U.S. at 837, 114 S. Ct. 1970 (emphasis added). In interpreting <u>Farmer</u> and <u>Estelle</u>, this Court explained in <u>McElligott</u> that "deliberate indifference has three components: (1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; (3) by conduct that is more than mere negligence." <u>McElligott</u>, 182 F.3d at 1255; <u>Taylor</u>, 221 F.3d at 1258 (stating that defendant must have subjective awareness of an "objectively serious need" and that his response must constitute "an objectively insufficient response to that need").

<u>Farrow</u>, 320 F.3d at 1245-46 (emphasis in original).

10. The Court assumes, for purposes of this motion, that Plaintiff's head and neck pain constitutes an objectively serious medical injury. Therefore, the Court turns to the second, subjective element of Plaintiff's claim, that is, whether Defendant was deliberately indifferent to Plaintiff's serious medical need.

11. Plaintiff asserts that the fact that he suffered from head and neck pain and was treated but not sent to a free world doctor, and also that he allegedly had numbness in his fingers and slurred speech following his days of treatment by Dr. Barnes, constitutes "deliberate indifference" by Defendant to his serious medical need. The Court disagrees.

12. In order to constitute "deliberate indifference," Defendant must have known of and disregarded an excessive risk to Plaintiff's health. <u>Farrow</u>, 320 F.3d at 1245-46.

9

13. Assuming Plaintiff's allegations as true, he complained of neck and head pain on November 25, 2006, and was treated with ibuprofen on that day. However, Plaintiff was unable to actually see Dr. Barnes until the following day, November 26, 2006. (Doc. 1 at 4). At this time, he complains that Dr. Barnes "refused to send [him] to the free world hospital." (Id.). He also complains that Dr. Barnes did not admit him to the infirmary until November 30, 2006. (Id.). Then, following his release from the infirmary, Plaintiff contends that his mouth "twisted up," he lost feeling in his fingers, and that his speech was slurred. Plaintiff states that Lt. Steve Lane advised him that he "looked as if [he] had a stroke." (Id.). Plaintiff alleges that Lt. Lane also told him that Lt. Lane "heard" that Plaintiff was given the wrong medication. (Id.).

14. Although Plaintiff makes these allegations, he does not challenge the accuracy of his medical records. The medical records reveal that Plaintiff was treated extensively with numerous medications, examinations, monitoring, x-rays, and blood tests. Despite Plaintiff's allegation that he was given the "runaround," there is no evidence that Dr. Barnes refused to treat Plaintiff's complaints, ever stopped treating Plaintiff's complaints, or that he ever stopped trying to improve Plaintiff's condition. The records show that Dr. Barnes gave much attention to Plaintiff's complaints, and sought to correct them. The medical evidence, again which Plaintiff has not disputed, shows that Plaintiff was promptly treated using many different medical resources. Even assuming Plaintiff's allegations as true, they do not in any way reflect "deliberate indifference," and they do

not establish a constitutional violation.

15.  While Plaintiff contends that he suffered a stroke as a result of Dr. Barnes' treatment of him, there is no medical evidence in the record establishing that allegation. See Hill, 40 F.3d at 1188 ("[a]n inmate who complains that delay in medical treatment rose to a constitutional violation must place verifying medical evidence in the record to establish the detrimental effect of delay in medical treatment to succeed.").  Plaintiff's personal belief that he suffered a stroke is insufficient.

16. "When a prison inmate has received medical care, courts hesitate to find an Eighth Amendment violation."  Waldrop v. Evans, 871 F.2d 1030, 1035 (11th Cir. 1989). The fact that a plaintiff may disagree with the efficacy of the treatment recommended or simply prefer a different course of treatment does not state a valid claim of medical mistreatment under the Eighth Amendment.  See, e.g., Adams v. Poag, 61 F.3d 1537, 1545 (11th Cir. 1995) ("the question of whether governmental actors should have employed additional diagnostic techniques or forms of treatment 'is a classic example of a matter for medical judgment' and therefore not an appropriate basis for grounding liability under the Eighth Amendment.") (quoting Estelle, 429 U.S. at 107).

17. Moreover, it is well established that "[s]imple medical malpractice ... does not rise to the level of a constitutional violation."  Waldrop, 871 F.2d at 1035.  Thus, even if the Court were to assume that Plaintiff had been incorrectly diagnosed and/or treated by Dr. Barnes, of which there is no evidence, Eighth Amendment liability cannot be

grounded on "mere negligence." <u>Farrow</u>, 320 F.3d at 1245. "Medical malpractice does not become a constitutional violation merely because the victim is a prisoner." <u>Estelle</u>, 429 U.S. at 106, 97 S. Ct. 285.

18. Inasmuch as Plaintiff's own medical records establish that he received extensive medical treatment for his neck and head pain from November 25, 2006, through December 1, 2006, Plaintiff has failed to meet the subjective element of "deliberate indifference" necessary to constitute an Eighth Amendment violation. Thus, Defendant is entitled to summary judgment.

## V.  CONCLUSION

Based on the foregoing, it is recommended that Plaintiff's motion to dismiss all claims against Defendants Correctional Supervisor Lt. Steve Lane, Nurse Assistant Alicia Hetrick, and Nurse Shawn Geohagan be GRANTED and that the motion for summary judgment filed by Defendant Dr. Robert Barnes (Doc. 11), be GRANTED. Plaintiff's action against all Defendants should be dismissed with prejudice.

The instructions which follow the undersigned's signature contain important information regarding objections to the report and recommendation of the Magistrate Judge.

DONE this 6th day of May, 2008.

                                                     s/WILLIAM E. CASSADY
                                                    UNITED STATES MAGISTRATE JUDGE

13

MAGISTRATE JUDGE'S EXPLANATION OF PROCEDURAL RIGHTS
AND RESPONSIBILITIES FOLLOWING RECOMMENDATION
AND FINDINGS CONCERNING NEED FOR TRANSCRIPT

1.    Objection.  Any party who objects to this recommendation or anything in it must, within ten days of the date of service of this document, file specific written objections with the clerk of court.  Failure to do so will bar a *de novo* determination by the district judge of anything in the recommendation and will bar an attack, on appeal, of the factual findings of the magistrate judge.  See 28 U.S.C. § 636(b)(1)(C); Lewis v. Smith, 855 F.2d 736, 738 (11th Cir. 1988); Nettles v. Wainwright, 677 F.2d 404 (5th Cir. Unit B, 1982)(*en banc*).  The procedure for challenging the findings and recommendations of the magistrate judge is set out in more detail in SD ALA LR 72.4 (June 1, 1997), which provides that:

> A party may object to a recommendation entered by a magistrate judge in a dispositive matter, that is, a matter excepted by 28 U.S.C. § 636(b)(1)(A), by filing a "Statement of Objection to Magistrate Judge's Recommendation" within ten days after being served with a copy of the recommendation, unless a different time is established by order.  The statement of objection shall specify those portions of the recommendation to which objection is made and the basis for the objection.  The objecting party shall submit to the district judge, at the time of filing the objection, a brief setting forth the party's arguments that the magistrate judge's recommendation should be reviewed *de novo* and a different disposition made.  It is insufficient to submit only a copy of the original brief submitted to the magistrate judge, although a copy of the original brief may be submitted or referred to and incorporated into the brief in support of the objection.  Failure to submit a brief in support of the objection may be deemed an abandonment of the objection.

A magistrate judge's recommendation cannot be appealed to a Court of Appeals; only the district judge's order or judgment can be appealed.

2.    Transcript (applicable where proceedings tape recorded).  Pursuant to 28 U.S.C. § 1915 and Fed. R. Civ. P. 72(b), the magistrate judge finds that the tapes and original records in this action are adequate for purposes of review.  Any party planning to object to this recommendation, but unable to pay the fee for a transcript, is advised that a judicial determination that transcription is necessary is required before the United States will pay the cost of the transcript.